UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ATIF TASNEEM,                          *
                                       *
        Plaintiff,                     *
                                       *
        v.                             *
                                       *      Civil Action No. 25-30072-MGM
STUFFT, et al.                         *
                                       *
        Defendant.                     *


MEMORANDUM AND ORDER REGARDING DEFENDANTS'
MOTION TO DISMISS
(Dkt. No. 7)
March 31, 2026

MASTROIANNI, U.S.D.J.

## I.    INTRODUCTION

This case arises from Syeda Saima Akram's ("Syeda") unscheduled consulate interview for her visa petition which has been pending with the Department of State's National Visa Center ("NVC") since 2022. Plaintiff, Syeda's brother, serves as Syeda's financial guarantor for the petition, which means he is contractually obligated to prevent Syeda from becoming dependent on the U.S. government for subsistence. The Complaint asserts claims for unreasonable delay under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 706(1) & 555(b) (Count I); seeks to compel agency action pursuant to the Mandamus and Venue Act ("Mandamus Act"), 28 U.S.C. §§ 1361 and 1651 (Count II); and alleges Fifth Amendment due process violations (Count III). These claims are brought against Natalie A. Baker (the Deputy Chief of Mission in Pakistan), Marco Rubio (the Secretary of the Department of State), and Julie Stufft (the Senior Bureau Official for the Bureau of Consular Affairs). Plaintiff seeks a court order requiring Defendants to process Syeda and her family's visa applications within 15 days of the order or as soon as reasonably possible and grant attorneys' fees and costs under the Equal Access to Justice Act or other authorities.

Pursuant to Fed. R. Civ. P. 12(b)(1), all Defendants moved to dismiss for mootness as to Plaintiff's claims against two Defendants, and pursuant to Fed. R. Civ. P. 12(b)(6), all Defendants moved to dismiss for failure to state a claim upon which relief may be granted. In response, Plaintiff filed an opposition.[1]

For the reasons that follow, the court grants Defendants' motion to dismiss as to Count III and denies it as to Counts I and II.

## II.    BACKGROUND

On August 9, 2006, Tasneem Syed, Plaintiff's father, properly filed a Form I-130, Petition for Alien Relative, with U.S. Citizenship and Immigration Services ("USCIS") for his Pakistani citizen adult daughter Syeda. (Compl., Dkt. No. 1 ¶¶ 2, 17.) Her husband and her four children are derivative beneficiaries. (*Id.*) On August 16, 2010, USCIS approved the Form I-130. (*Id.* ¶ 18.) At some point thereafter, USCIS sent Syeda a letter stating that the approval of her Form I-130 was being revoked because her father had passed away. (*Id.* ¶ 19.) However, Syeda was given the option to revive her Form I-130 by seeking humanitarian reinstatement, a process through which USCIS may exercise its discretion to reinstate a Form I-130 that was revoked because of a petitioner's death. (*Id.* (citing 8 C.F.R. § 205.1(a)(3)(i)(C)(2)). In May 2019, Syeda submitted documents

---

[1] On February 5, 2026, Plaintiff filed a notice of supplemental authorities informing the court that his family will not become public charges in light of the Department of State's pausing immigration processing in Pakistan and in other countries due to the risk of certain foreign nationals entering the United States and becoming financial burdens. The court takes judicial notice (*see Newton Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020)) that on January 21, 2026, the Department of State issued an announcement stating that it has "paused all visa issuances to immigrant visa applicants." U.S. Dep't of State, "Immigrant Visa Processing Updates for Nationalities at High Risk of Public Benefits Usage," Travel.State.Gov (last updated Feb. 2, 2026), https://travel.state.gov/content/travel/en/News/visas-news/immigrant-visa-processing-updates-for-nationalities-at-high-risk-of-public-benefits-usage.html (accessed Mar. 23, 2026). Under the Frequently Asked Questions section, the notice goes on to state, "Immigrant visa applicants who are nationals of affected countries [which includes Pakistan] may submit visa applications and attend interviews, and the Department will continue to schedule visa interviews." *Id.* Therefore, the announcement does not appear to have an impact on Plaintiff's requested relief: the scheduling of Syeda's visa interview.

supporting her reinstatement request of her Form I-130, and named Plaintiff, a U.S. citizen, as a substitute financial sponsor. (*Id.*) On January 31, 2022, USCIS notified Syeda that it had reaffirmed the Form I-130 and that it would send the Form I-130 to the NVC. (*Id.* ¶ 20.)

On March 13, 2024, the NVC notified Syeda that her and her derivative beneficiaries' cases had been "Documentarily Qualified," meaning that all necessary documents had been submitted and that the visa applications were now in the queue to be scheduled for a visa interview. (*Id.* ¶ 22.) On April 19, 2024, Plaintiff emailed the NVC regarding Syeda's case, and three days later, NVC informed him: "This case is documentarily complete, which means the NVC has all the documents we requested. Your application is waiting for an interview appointment, where a consular officer will adjudicate it." (*Id.* ¶ 24. (citing Ex. A)). However, Defendants have yet to schedule an interview for Syeda or take any further action in processing Syeda's visa application. (*Id.* ¶ 25.)

As a result of not having her immigration petition adjudicated, Plaintiff, Syeda, and her family have suffered in several ways. The lack of family support has affected Plaintiff's ability to take care of his disabled 12-year-old son and to manage his businesses. (*Id.* ¶¶ 7, 9.) Additionally, the time difference and the distance between the United States and Pakistan have made communication challenging, and he has only been able to visit his sister twice due to financial reasons. (*Id.* ¶ 9.) Finally, Syeda and her husband have had to start a real estate business in Pakistan, rather than in the United States, and it is not doing well. (*Id.*) Syeda's college-age children cannot attend college because of the lack of quality education in Pakistan, and one of her older children cannot pursue a PhD for the same reason. (*Id.* ¶ 8.)

### III.    MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Determining whether a complaint

states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court accepts all well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor, but "do[es] not credit legal labels or conclusory statements." *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022). Additionally, "some latitude" may be appropriate where a plausible claim may be indicated "based on what is known," and at least where "some of the information needed may be in the control of [the] defendants." *Pruell v. Caritas Christi,* 678 F.3d 10, 15 (1st Cir. 2012). "While a district court is generally limited to considering facts and documents that are part of the complaint, it may also consider documents incorporated by reference in the complaint, matters of public record, and other matters susceptible to judicial notice." *Newton Covenant Church*, 956 F.3d at 35 (internal quotation marks and original alterations omitted). Dismissal is appropriate if the complaint fails to establish at least one "material element necessary to sustain recovery under some actionable legal theory." *N.R. by and through S.R. v. Raytheon Co.,* 24 F.4th 740, 746 (1st Cir. 2022) (internal quotation marks omitted).

## IV.    DISCUSSION

### A.  Statutory Scheme

*1. Consular Processing*

"A [non-citizen] needs an immigrant visa to enter and permanently reside in the United States." *Scialabba v. Cuellar de Osorio,* 573 U.S. 41, 46 (2014) (citing 8 U.S.C. § 1181(a)). To obtain a visa, the non-citizen must fall within one of six family preference categories. *Id.* (citing 8 U.S.C. §§ 1151(a)-(b)). Of these, five are subject to annual limitations on visas, including the third preference category (which includes married sons or daughters of U.S. citizens) that is relevant in the case at bar. *See* 8 U.S.C. §§ 1151(a)(1), 1153(a)(1)-(4).

A United States citizen or lawful permanent resident ("petitioner") initiates the immigration process for their non-citizen relative ("beneficiary") when they file the Form I-130 (Petition for

4

Alien Relative) with USCIS. *Scialabba*, 573 U.S. at 47 (citing 8 U.S.C §§ 1154(a)(1)(A)(i), (a)(1)(B)(i)(I), (b); 8 CFR § 204.1(a)(1)). The Form I-130 is *not* the same as a visa application and its approval does not confer any immigration benefit; rather, its purpose is solely to establish the underlying qualifying relationship that allows a non-citizen to apply for permanent residency. *Id.*; *see also Pishdadiyan v. Clinton*, No. CIV.A. 11-10723-JLT, 2012 WL 664774, at *1–2 (D. Mass. Feb. 7, 2012); *see also* U.S. Citizenship & Immigration Services, Form I-130, Petition for Alien Relative, https://www.uscis.gov/i-130 (last visited Mar. 24, 2026).

If USCIS approves the Form I-130, pursuant to 8 U.S.C. § 1154(b), that generally does not result in the non-citizen receiving a visa "then and there, but only in getting a place in line" unless the non-citizen is what is known as an immediate relative for whom there are no visa restrictions. *Scialabba*, 573 U.S. at 47-48. The non-citizen relative is "placed in a queue with others in her category . . . in order of 'priority date'—that is, the date [the Form I-130] was filed with USCIS." *Id.* at 48. (citing 8 U.S.C. § 1153(e)(1); 8 CFR § 204.1(b); 22 CFR 42.53(a)). Within the five family preference categories, the number of visas available for each year varies based on country with demand regularly outweighing supply. *Id.* The availability of a visa is determined by the Department of State's "cut-off date for each family preference category, indicating that visas . . . are available for beneficiaries with priority dates earlier than the cut-off." *Id.* (citing 8 CFR § 245.1(g)(1); 22 CFR § 42.51(b)); *see also* Dept. of State, Bureau of Consular Affairs, 9 Visa Bulletin, Immigrant Numbers for March 2026 (March 17, 2026).

Regardless of whether a visa is available, immediately after USCIS approves a Form I-130, the case is forwarded to the Department of State's NVC. 8 C.F.R. § 204.2(d)(3); *see also* U.S. Citizenship & Immigration Services, "Consular Processing," *USCIS.gov* (last reviewed July 20, 2023), https://www.uscis.gov/green-card/green-card-processes-and-procedures/consular-processing (accessed Mar. 23, 2026). Once at the NVC, the Form I-130 sits until "an immigrant visa number is

available for [the non-citizen relative]." *Id.*; 8 U.S.C. § 1201(a). The NVC is responsible for requesting "the immigrant visa application fee and all documentation[] [including the DS-260 Immigrant Visa Application]" if the priority date "matches or will soon match the most recent date allowed (the Cut-Off date)" and will "hold [the] petition and all documentation until [the non-citizen's] immigrant visa interview can be scheduled at a U.S. Embassy or Consulate." U.S. Dep't of State, National Visa Center, https://travel.state.gov/content/travel/en/us-visas/immigrate/national-visa-center.html (last visited Mar. 22, 2026).

Once a visa is available and the non-citizen relative is deemed "documentarily qualified [meaning that the Department of State has determined the non-citizen has paid the necessary fees and submitted all required documents]," the Department of State schedules an immigration visa interview with a consular officer at an embassy with jurisdiction over the beneficiary's residence. 8 U.S.C. § 1202(a); 22 C.F.R. §§ 42.61(a), 42.62; *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 (D.D.C. 2022); *see also* U.S. Dep't of State, IV Scheduling Status Tool, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/iv-wait-times.html (last visited Mar. 22, 2026) ("Interviews can only be scheduled if a visa is available.").

Only when a non-citizen is invited for an interview with a consular officer can the non-citizen "properly" complete and execute their visa application. 22 C.F.R. § 40.1(l)(2) (explaining that an applicant must "personally appear[] before a consular officer" to formally execute their visa application). After the interview, the consular officer must "issue," "refuse," or "discontinue granting the visa" pursuant to an outstanding order under the Immigration and Nationality Act ("INA") § 243(d). 22 C.F.R. § 42.81(a).

*2. The Role of a Substitute Sponsor under Humanitarian Reinstatement*

The INA forbids admission to the United States of any non-citizen who "is likely at any time to become a public charge." 8 U.S.C. § 1182(a)(4)(A). "A family-based immigrant is presumptively

likely to become a public charge." *Belevich v. Thomas*, 17 F.4th 1048, 1050 (11th Cir. 2021) (citing 8 C.F.R. § 213a.2(a)(1)(i)(A), (a)(2)(i)). "But that presumption can be overcome if a [petitioning] relative executes an 'affidavit of support.'" *Id.* (citing 8 C.F.R. § 213a.2(a)(1)(i)(A); 8 C.F.R. § 213a.2(a)(2)(i); 8 U.S.C. § 1182(a)(4)(C)(ii); 8 U.S.C. § 1182(a)(4)(D)). Under 8 U.S.C. § 1183a(f)(1)(D), therefore, the U.S. citizen or lawful permanent resident petitioner usually also serves as the sponsor. This affidavit of support serves as a contract through which the sponsor promises the United States that he or she will support the non-citizen "at an annual income that is not less than 125 percent of the Federal poverty line." 8 U.S.C. § 1183a(a)(1)(A).

There are certain situations in which the sponsor may be different than the petitioner. One such case is if the petitioner passes away prior to the approval of a visa but after the approval of the Form I-130. In this situation, "approval of a petition or self-petition [Form I-130] made under § 204 of the Act . . . is revoked as of the date of approval." 8 CFR 205.1(a). However, USCIS can exercise its discretionary power to nevertheless reinstate the approval of the petition if "a person related to the [non-citizen] in one of the ways described in § 213A(f)(5)(B) [8 USC § 1183a(f)(5)(B)] of the Act is willing and able to file an affidavit of support under 8 CFR part 213a as a substitute sponsor." 8 CFR 205.1(a)(3)(i)(C)(2).

Under 8 USC § 1183a(f)(5)(B), "a spouse, parent, mother-in-law, father-in-law, sibling, child (if at least 18 years of age), son, daughter, son-in-law, daughter-in-law, sister-in-law, brother-in-law, grandparent, or grandchild of a sponsored [non-citizen] or a legal guardian of a sponsored [non-citizen]" may serve as the substitute sponsor so long as they fulfill all of the conditions listed under 8 USC § 1183a(f)(1) except the requirement that they also have to be the petitioner. *Id.* If USCIS grants humanitarian reinstatement, because the Form I-130 is not revoked, the priority date and the non-citizen's underlying family preference category remains the same, despite the death of the U.S. citizen or lawful permanent resident petitioner because the only aspect that changes is the identity of

7

the sponsor. 8 CFR 205.1(a)(3)(i)(C)(2); *see also* U.S. Citizenship & Immigr. Servs., *Humanitarian Reinstatement*, https://www.uscis.gov/green-card/humanitarian-reinstatement (last visited Mar. 22, 2026).

### B. Whether Defendants are Properly Named

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *FDA v. Alliance for Hippocratic Med.,* 602 U.S. 367, 378 (2024). The doctrine of mootness enforces the mandate "that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003) (citing *Steffel v. Thompson,* 415 U.S. 452, 460 n. 10 (1974)). Thus, mootness can be viewed "as 'the doctrine of standing set in a time frame.'" *Id.* (citing *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397 (1980)). "The heavy burden of showing mootness is on the party raising the issue." *Lowe v. Gagné-Holmes*, 126 F.4th 747, 755 (1st Cir. 2025) (internal quotation marks omitted).

Here, Defendants do not assert that Plaintiff does not have standing to initiate the suit.[2] Rather, Defendants' mootness argument is limited to the improper naming of the Secretary of State and the Senior Bureau Official of the Bureau of Consular Affairs as Defendants. Defendants initially frame Plaintiff's complaint as requesting the favorable adjudication of Syeda's visa petition from these two Defendants and asserted that such a request would make his action moot because neither Defendant can provide such a remedy. (Mot. to Dismiss, Dkt. No. 8 at 6.)  Later, however, Defendants depict Plaintiff's requested remedy as seeking "to compel action on specific Visa Applications, which is the exclusive province of a U.S. consulate." (*Id.* at 6-7.) The court agrees with

---

[2] Because Defendants do not raise the issue of whether, as a financial sponsor, Plaintiff had prudential standing to initiate this action, the court will not *sua sponte* conduct a zone of interests inquiry because prudential standing cannot "be the basis for a *sua sponte* dismissal absent extraordinary circumstances." *CSL Plasma Inc. v. U.S. Customs & Border Prot.*, 33 F.4th 584, 588 (D.C. Cir. 2022) (citing *Am. Inst. of Certified Pub. Accts. v. I.R.S.,* 804 F.3d 1193, 1199 (D.C. Cir. 2015) (explaining that the zone of interests test must be treated procedurally like any other "non-jurisdictional issue")).

this latter characterization of Plaintiff's request for relief: Plaintiff is not seeking a favorable

adjudication because such a remedy, as Plaintiff correctly stated in his opposition, is outside the

bounds of Defendants' legal obligations. (Pl.'s Opp'n Mot., Dkt. No. 10 at 11.)  Rather, Plaintiff is

seeking to have consular officers "conclude . . . matter[s] presented to [them]" "within a reasonable

time," 5 U.S.C. § 555(b), in light of the statutory requirement that "all immigrant visa applications

*shall* be reviewed and adjudicated by a consular officer" under 8 U.S.C. § 1202(b). (*See* Dkt. No. 1 ¶¶

27-28.)

In support of their mootness argument as to the Secretary of State, Defendants assert that

the INA "grants consular officers 'exclusive authority to review applications for visas, precluding

even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985

F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir.

1999)); *see also Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986) ("The [INA]

thereby conferred upon consular officials the authority to issue or withhold visas . . . Congress

specifically exempted the exercise of this power from review by the Secretary of State."); *see also*

*Munyaneza v. Blinken*, No. 21-CV-2778 (TSC) 2022 WL 4598629, at *2 (D.D.C. Sept. 30, 2022).

However, as the *Al-Gharawy* court pointed out, there is nothing in *Baan Rao* or *Saavedra Bruno*

that "precludes the Secretary—who oversees the Department of State . . . —from directing consular

officers 'to conclude ... matter[s] presented to [them]' 'within a reasonable time,' and Defendants

have identified no authority supporting such a defense." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*,

617 F. Supp. 3d 1, 10 (D.D.C. 2022) (quoting 5 U.S.C. § 555(b)).

In *Raouf v. U.S. Dep't of State*, the court considered the holding in *Li Hing of Hong Kong, Inc.*,

but ultimately found the Secretary of State to be a proper party at the motion to dismiss stage,

because the plaintiff was simply asking for the defendant to make a decision on her non-citizen

spouse's visa application. *Raouf v. U.S. Dep't of State,* 702 F. Supp. 3d 19, 29 (D.N.H. 2023). The INA

9

entrusts the Secretary of State with "the administration and the enforcement of the provisions of this chapter and all other immigration and nationality laws relating to . . . the powers, duties, and functions of diplomatic and consular officers of the United States." *Id.* (quoting 8 U.S.C. § 1104(a)). While this authority does not extend to "those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas," that was irrelevant in *Raouf*, as it is in this case, since the issue was the timing, as opposed to the substance, of a decision on the visa application. *Id.*; *see also Ahmed v. Blinken*, 759 F. Supp. 3d 1, 9 (D.D.C. 2024) (finding that while the INA does grant "consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations," that had no bearing on the relief Plaintiff sought: to have her adjudication completed.)

Finally, Defendants cite *Munyaneza*, 2022 WL 4598629, at *2, where the Plaintiff's non-citizen spouse's visa had been placed in administrative processing following an interview with a consular officer. The court found that Plaintiff lacked standing to sue the Secretary of State and the Acting Legal Adviser because of the "exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations." *Id.* (citing *Baan Rao Thai Rest.*, 985 F.3d at 1024). The reliance on *Munyaneza* is unpersuasive here because unlike in *Munyaneza*, Syeda has not even been able to formally submit her visa and therefore, her visa has not been placed in administrative processing following an interview. There is nothing in *Munyaneza* to support Defendants' argument that the "exclusive authority to review applications for visas" includes scheduling interviews. Finally, Plaintiff, here, unlike in *Munyaneza*, did not include the Acting Legal Adviser as a defendant.

As to the Senior Bureau Official, Defendants have not met their "heavy burden" of showing mootness because they have not cited any authority supporting their assertion the Senior Bureau Official was wrongly listed as a defendant. *Lowe*, 126 F.4th at 755. Defendants have not shown that

10

the Senior Bureau Official does not have the authority to direct consular officers to adjudicate, including by scheduling interviews, within a reasonable time. *See Al-Gharawy,* 617 F. Supp. 3d at 10 (citing 5 U.S.C. § 555(b)). At this stage in litigation, the court finds all of the defendants have been appropriately named.

### C.  Plaintiff's APA (Count I) and Mandamus Act (Count II) Claims

Defendants assert Plaintiff's APA and Mandamus Act claims should be dismissed for lack of subject matter jurisdiction because Plaintiff "does not cite to, nor could he, any specific or unequivocal command placed on the Department or the U.S. Embassy" to schedule Syeda's consular interview or otherwise adjudicate her visa petition. (Dkt. No. 8 at 10.) And while they acknowledge that "[t]ime has passed since the initial submission of the plaintiff's Beneficiary's petition," they argue that "a mere delay in scheduling an interview does not necessarily mean the delay is unreasonable." (*Id.* at 11.) Plaintiff, in response, asserts that Defendants have failed to conduct their nondiscretionary duty of reviewing and adjudicating "his family's properly filed visa application through conclusion and within a reasonable time pursuant to the INA and the APA." (Dkt. No. 10 at 12.)

"While the APA does not provide an independent source of subject matter jurisdiction," *Conservation L. Found. v. Busey*, 79 F.3d 1250, 1261 (1st Cir. 1996), "federal courts can utilize the APA in conjunction with other statutes, such as § 1331, to give the court jurisdiction to compel action from a government agency unlawfully withheld or unreasonably delayed," *Pishdadiyan*, 2012 WL 601907, at *11 (citing *Norton v. Couth Utah Wilderness Alliance,* 542 U.S. 55, 64 (2004)).

"Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under the [Mandamus Act] 'in essence,' as one for relief under § 706 of the APA." *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4

11

(1986)). Courts in the First Circuit have construed "the APA and the [Mandamus Act] to be coextensive to the extent that the APA creates a nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay." *Mustafin v. Rubio*, No. 24-CV-12484-ADB, 2025 WL 1594754, at *4 (D. Mass. June 5, 2025) (citing *Pishdadiyan*, 2012 WL 601907, at *11); *see also Litvin v. Chertoff,* 586 F. Supp. 2d 9, 11 (D. Mass. Nov. 19, 2008) ("The APA, in conjunction with § 1331, provides courts with jurisdiction to 'compel agency action unlawfully withheld or unreasonably delayed.'"); *Vorontsova v. Chertoff*, No. CIV. A. 07-10426-RGS, 2007 WL 3238026, at *3 (D. Mass. Nov. 2, 2007) ("Although there are differences in the applicable tests, a claim seeking mandamus under the [Mandamus Act] is in essence the same as a claim for relief under the APA . . . A claim under [APA] § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.") (internal quotation marks omitted)); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 154-156 (D. Mass. 2007); *Morgovsky v. Dep't of Homeland Sec.,* 517 F. Supp. 2d 581, 584-585 (D. Mass. 2007); *King v. Off. for C.R. of U.S. Dep't of Health & Hum. Servs.,* 573 F. Supp. 2d 425, n.2 (D. Mass. 2008) (citing *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir.1997)); *Manshadi v. Allen*, No. 24-CV-10118-ADB, 2025 WL 524173, at *3 (D. Mass. Feb. 18, 2025). Accordingly, the court considers Plaintiff's APA (Count I) and Mandamus Act (Count II) claims together.

Evaluating the APA claim in conjunction with the Mandamus Act is a two-step process. First, the court must determine whether "a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Mustafin*, 2025 WL 1594754, at *4 (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted)). Upon finding that the first prong has been met, the court must then evaluate, coextensively with the Mandamus Act, "whether the agency's delay 'is so egregious that mandamus is warranted.'" *Rezaii,* No. 1:24-CV-10838-JEK, 2025

12

WL 750215, at *4 (D. Mass. Feb. 24, 2025) (citing *Kokajko v. FERC*, 837 F.2d 524, 526 (1st Cir. 1988)).[3]

*1. Defendants failed to carry out a nondiscretionary agency action that they were required to take*

There is no First Circuit precedent on whether consular officials have a nondiscretionary duty to act upon a visa without unreasonable delay, but district courts within the First Circuit have "typically" found that such a duty exists. *Manshadi*, 2025 WL 524173, at *3 (citing *Durrani v. Bitter*, No. 24-cv-11313, 2024 WL 4228927, at *2 (D. Mass. Sept. 18, 2024)); *see also Conley v. U.S. Dep't of State*, 731 F. Supp. 3d 104, 109 (D. Mass. 2024) (explaining that courts in the First Circuit have generally found a "nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay"); *Pishdadiyan*, 2012 WL 601907, at *11 (collecting cases); *Dy v. Blinken*, 703 F. Supp. 3d 314, 317 (D. Mass. 2023); *Litvin,* 586 F. Supp. 2d at 11; *King,* 573 F. Supp. 2d at 429 n. 2; *Tang,* 493 F. Supp. 2d at 154-156; *Morgovsky,* 517 F.Supp.2d at 584-585; *Vorontsova,* 2007 WL 3238026, at *3.

Embedded within this larger issue lies the question presented before this court: If consular officers have a nondiscretionary duty to adjudicate visas, does that duty extend to the scheduling of a visa application interview? Courts have come out on both sides based on their differences in interpretation of the last sentence of 8 U.S.C. § 1202(b) and 22 C.F.R. § 42.81(a). 8 U.S.C. § 1202(b) in relevant part states, "All immigrant visa applications *shall* be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b) (emphasis added). 22 C.F.R. § 42.81(a) states that once a visa application has been properly completed and executed before a consular officer, the officer "must"

---

[3] Some courts articulate the second prong for claims brought under the APA and the Mandamus Act as being whether the delay was "unreasonable" as opposed to "egregious." *See Roe v. Mayorkas*, No. 22-cv-10808-ADB, 2023 WL 3466327, at *17 (D. Mass. May 12, 2023) ("Resolving whether . . . delay is egregious requires a fact-bound analysis that the Court declines to engage in at this early stage of the litigation." (internal quotation marks omitted)).

issue, refuse, or discontinue granting the visa. Courts generally fall into the three groups described below.[4]

One group of courts that have found a mandatory, non-discretionary duty to schedule consular interviews rely, in part, on the use of the "imperative words 'shall' and 'must,' [found in 8 U.S.C. § 1202(b) and 22 C.F.R. § 42.81(a)] indicating that they impose a mandatory duty to adjudicate visa applications." *Russell v. Blinken*, No. 23-CV-520-JDP, 2024 WL 1908814, at *3 (W.D. Wis. May 1, 2024); *see also Iqbal v. Blinken*, No. 2:23-CV-01299-KJM-KJN, 2023 WL 7418353, at *6 (E.D. Cal. Nov. 9, 2023) ("[T]he use of the word 'shall' indicates a mandatory nondiscretionary duty to review and adjudicate immigrant visa applications."). For a consular officer to adjudicate an immigrant visa petition, a beneficiary must attend a consular interview to formally execute their visa petition (*see* 22 C.F.R. § 40.1(l)(2)), "so a mandatory duty to adjudicate filed visa applications necessarily includes a mandatory duty to schedule consular interviews." *Russell*, 2024 WL 1908814, at *3 (internal quotation marks omitted); *see also Azam*, 2024 WL 912516, at *6 (explaining that the visa interview is "an unquestionably crucial component of the visa process" as it helps determine whether the non-citizen is eligible for the visa).

Non-citizens would be left in a legal limbo if no one could "take any actions to prod [the agency] to schedule an interview, but [they] also [could not] bring suit to compel the agency to schedule the interview so it can adjudicate [their] application, as statutorily required." *Iqbal*, 2023 WL 7418353, at *7; *see also Russell*, 2024 WL 1908814, at *3 (explaining that interpreting § 1202(b) and § 42.81(a) as requiring the "State Department to adjudicate visa applications only after an application

---

[4] A fourth less common approach can be seen in *Azam v. Bitter* where the court found a clear, nondiscretionary duty to schedule a visa applicant for a consular interview under the APA, but did not exercise subject matter jurisdiction because the plaintiff had not pled that the defendant had "abdicated their responsibility to review and adjudicate visa petitions or are, in bad faith, abusing their discretion in reviewing or adjudicating visa petitions." *Azam v. Bitter*, No. CV 23-4137 (RMB), 2024 WL 912516, at *7 (D.N.J. Mar. 4, 2024).

is filed," would quash "any mandatory effect that these laws have in the first place"). The result would be an agency being able to "avoid its duty to adjudicate applications by simply not scheduling any interviews." *Russell*, 2024 WL 1908814, at *3 (citing *Azam*, 2024 WL 912516, at *6). Such an interpretation would entail "an absurd result." *Azam,* 2024 WL 912516, at *6 (citing *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided")); *see also Iqbal,* 2023 WL 7418353, at *7 (quoting *Liu v. Michael Chertoff,* No. 07-00734, 2007 WL 2119427, at *1 (N.D. Cal. July 23, 2007) ("To hold [that a nondiscretionary duty to adjudicate plaintiffs' immigrant visa petitions, which include the action of scheduling their interviews, within a reasonable time does not exist] would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law.")).

In *Azam*, a New Jersey district court rejected Defendant's argument that the court should find no discretionary duty under § 1202(b) because of its statutory title ("Other documentary evidence for immigrant visa") because a title "cannot override the plain meaning of its text." *Azam*, 2024 WL 912516, at *6 (citing Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 221 (2012)). Rather, the court found, this section could be read as imposing two requirements: "First, a consular official must be the official who 'review[s] and adjudicate[s]' the visa application," and "[s]econd, that visa application 'shall' in fact be 'reviewed and adjudicated' by a consular official." *Id.* (quoting § 1202(b)).[5]

---

[5] The *Al-Gharawy* court also examined 8 U.S.C. § 1202(b), 22 C.F.R. § 42.81(a), and 22 C.F.R. § 42.43 (which lists the circumstances under which a consular officer "*shall* suspend action in a petition case" and if the officer does so, the regulation directs that she *must* "return the petition, with a report of the facts, for reconsideration by DHS") (emphasis added). *Al-Gharawy*, 617 F. Supp. 3d at 13. The court concluded that while the "INA vests consular officers with significant discretion to render a substantive decision to grant or deny a visa, there is reason to doubt that it has given consular officials similarly wide discretion indefinitely to delay a decision on a visa application." *Id.* Although the court conducted its analysis to determine whether the consular non-reviewability doctrine applied to a visa undergoing "administrative processing," the court's observations regarding the little discretion counselor officers have when it comes to the adjudication of visa petitions is relevant here. *Id.*

A second group of courts has held, as Defendants assert, that there is no nondiscretionary duty on the Department of State to schedule interviews. *See e.g.*, *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 14-15 (D.D.C. 2022); *Mueller v. Blinken*, 682 F. Supp. 3d 528, 535 (E.D. Va. 2023); *Ali v. United States Dep't of State*, 676 F. Supp. 3d 460, 470 (E.D.N.C. 2023); *Nasab v. Blinken,* No. 1:22-CV-02084 (CJN), 2022 WL 4473922, at *1 (D.D.C. Sept. 26, 2022); *Zarei v. Blinken,* No. 1:21-CV-02102 (CJN), 2021 WL 9146060, at *1 (D.D.C. Sept. 30, 2021). Within this camp, some of the courts turned to the broader statutory context of § 1202(b) by looking to its title and the rest of the section. In doing so, they found the purpose of the statutory provision to be to describe "what documentation a visa applicant must provide and to whom they must submit the documentation." *Babamuradova*, 633 F. Supp. at 14. Therefore, the relevant sentence in § 1202(b) could best be understood as "merely 'cabin[ing] the State Department's discretion as to *who* may review and adjudicate immigrant visa applications . . . [rather than mandating] that all applications actually be adjudicated.'" *Mueller*, 682 F. Supp. 3d at 535 (citing to *Babamuradova*, 633 F.Supp.3d at 15).

These courts also find it unlikely that Congress would impose a duty for all immigrant visas to be adjudicated given that "the ramifications of adopting [such an] interpretation of 8 U.S.C. § 1202(b) are extreme" since the section "provides guidelines for *all* immigrant visa applicants." *Id.* (emphasis in the original) (internal quotation marks omitted). They find it unlikely that Congress would impose such a far-reaching duty while burying it "in a provision discussing the necessary documents needed for a visa application generally." *Zarei*, 2021 WL 9146060, at *1 ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.") (citing *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001)).

In addition to relying on the statutory context, Defendants point to courts that have noted the broad authority that Congress has given the Secretary of State to "'administ[er] and [] enforce []'

the INA and 'administer, coordinate, and direct the Foreign Service of the United States and the personnel of State.'" *Ali*, 676 F. Supp. 3d at 470 (quoting 22 U.S.C. § 2651a(a)(3)(A) in relevant part). Each Chief of Mission also has "broad discretion to oversee U.S. government operations in that country." *Id.* (citing 22 U.S.C. § 3927). Therefore, if a consular office or embassy does not have the capacity to interview someone, "it cannot do so." *Id.*

A third group of courts have fallen somewhere in between, holding that, "to the extent that § 1202(b) imposes a nondiscretionary duty to adjudicate [a visa] application . . . that duty attaches only *after* [the] visa application is complete—*i.e.*, after [the applicant] has appeared before a consular officer." *Azam*, 2024 WL 912516, at *5 (citing *Farooq v. Blinken*, 2023 WL 5658357, at *3 (C.D. Cal. Aug. 11, 2023) (emphasis added)); *see also Khalili-Araghi v. Bitter*, 2023 WL 5988590, at *5 (N.D. Cal. Sept. 13, 2023)). This is due to the regulatory requirement that an applicant must "personally appear before a consular officer" to formally execute their visa application. *Azam*, 2024 WL 912516, at *5 (citing 22 C.F.R. § 40.1(l)(2)). After the "formal execution of a visa application," the consular officer "must issue the visa," "refuse the visa," or "discontinue granting the visa." 22 C.F.R. § 42.81.

The court finds that 5 U.S.C. § 555(b) along with "§ 1202(b) and § 42.81(a) impose a mandatory duty to take all steps necessary to adjudicate properly filed visa applications, including scheduling petitioners for consular interviews" without unreasonable delay. *Russell*, 2024 WL 1908814, at *3; *Durrani*, 2024 WL 4228927, at *2 ("Because neither party has offered a reason to depart from that principle, the Court will follow it here and exercise jurisdiction under the [Mandamus Act] to act on the APA claim.").

In reaching its conclusion on this matter, the court finds the reasoning laid out by the first group of courts persuasive. In reviewing the use of imperative words "shall" and "must" in § 1202(b) and § 42.81(a), the court agrees with *Azam* in finding that these "words mean what they say." *Azam*, 2024 WL 912516, at *6. When these two provisions are read alongside 22 C.F.R. §

17

42.43, the numerous strict requirements associated with the adjudication of visa petitions indicate that officers do not have as much discretion to indefinitely delay a decision on a visa application as in making substantive decisions. *Al-Gharawy,* 617 F. Supp. 3d at 13 (citing 22 C.F.R. § 42.43); *see also Patel v. Reno,* 134 F.3d 929, 931 (9th Cir. 1997) ("[W]hen [a] suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists.") (citing *Mulligan v. Schultz,* 848 F.2d 655, 657 (5th Cir.1988)).

To find that no mandatory duty exists for Defendants to adjudicate Syeda's visa or that the duty does not kick in until after the interview would leave Plaintiff in limbo since he would not be able to "take any actions to prod [the agency] to schedule an interview, but [he] also [could not] bring suit to compel the agency to schedule the interview so it can adjudicate [Syeda's] application, as statutorily required." *Iqbal*, 2023 WL 7418353, at *7. Such a finding would result in Plaintiff, who has already been waiting for twenty years to be reunited with his family, being left essentially powerless to compel agency action.

*2. The Court Cannot Determine at this Stage Whether There was Unreasonable Delay under the APA*

Defendants argue, in the alternative, that Plaintiff's claims should be dismissed for failure to state a claim because there has been no unreasonable delay in the processing of Syeda's visa petition. (Dkt. No. 8 at 12.) Finding that Defendants have a mandatory, non-discretionary duty under § 1202(b), 22 C.F.R. § 42.81(a), and 5 U.S.C. § 555(b) to adjudicate Syeda's visa application without unreasonable delay, which includes scheduling her interview, the court now turns to the second question under 5 U.S.C. § 706(1): Was the delay so egregious such that mandamus is warranted? *See Rezaii,* 2025 WL 750215, at *4. In answering this question, the First Circuit follows, but has not expressly endorsed, the "TRAC" factors laid out in *Telecommunications Research & Action Center v. Federal Communications Commission*, 750 F.2d 70 (D.C. Cir. 1984), to evaluate whether a timeframe for

agency action is unreasonable. *See Anversa v. Partners Healthcare Sys., Inc.,* 835 F.3d 167, 178 (1st Cir. 2016). Unreasonable delay is analyzed using these *TRAC* factors:

(1) the time agencies take to make decisions must be governed by a rule of reason;
(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Ahmed*, 759 F. Supp. 3d at 11 (citing *Telecommunications Research & Action Center*, 750 F.2d at 80).

"Because an analysis of the *TRAC* factors typically requires the court to wade through the particular facts and circumstances of an agency's delay, courts generally conclude that 'undertaking such a fact-bound analysis at [the motion to dismiss] stage is premature.'" *Al-Gharawy*, 617 F. Supp. 3d at 17–18 (citing *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 n.6 (D.D.C. 2020)); *see also Da Costa v. Immigr. Inv. Program Off.,* 643 F. Supp. 3d 1, 12 (D.D.C. 2022) ("There is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage, so the question of whether discovery is necessary depends, as with any sort of claim, on the particular Complaint."); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021) (finding "[in]sufficient information to resolve this issue on a motion to dismiss" because "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage"); *Litvin,* 586 F. Supp. 2d at 12 ("The question of whether that delay is unreasonable goes to the merits of the case, not this court's jurisdiction, and is better addressed after Parties have engaged in discovery."). The court here lacks a sufficient basis to hold at this stage that Plaintiff has failed to state a plausible claim of unreasonable delay. A preliminary examination of the *TRAC* factors indicates why.

The first two *TRAC* factors are usually considered together. *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021). "The first factor asks whether the agency's response time . . . is governed by an identifiable rationale [which is also described as a rule of reason]," and "the second looks at whether Congress has provided a timetable that may supply content for th[e] rule of reason." *Manshadi*, 2025 WL 524173, at *5 (internal quotation marks omitted) (alterations in the original). The court lacks sufficient information to determine whether this factor leans in the Plaintiff's or Defendants' favor at this early stage.

Defendants assert the identifiable rationale as being that interviews are scheduled based on "when the NVC determines that the case is documentarily complete, which is predicated on when the non-citizen submits the required supporting documents and pays the necessary fees." (Dkt. No. 8 at 13.) Defendants cite several cases that have identified scheduling in order of whose visa petition is deemed "documentarily complete" to be the "rule of reason." *See, e.g., Kennedy v. United States Dep't of State*, No. 24-CV-11556-DJC, 2025 WL 662566, at *3 (D. Mass. Feb. 28, 2025). Thus, Defendants focus on March 13, 2024, when Syeda's visa petition was found to be documentarily complete, as the relevant date for when the clock started ticking.

However, Defendants have not explained why it took over two years between when USCIS forwarded the Form I-130 to the NVC (January 31, 2022) and when the Form I-130 was deemed "documentarily qualified" (March 13, 2024). Related to this, Defendants do not address when Syeda's visa became available under the third family preference category as a married daughter of a U.S. citizen. *See supra* Section A, Consular Processing. Additionally, unlike the cases Defendants cite, here, USCIS granted a humanitarian reinstatement, an event which may have affected Department of State's scheduling of Syeda's interview. Without any additional information, the court cannot determine the amount of time that transpired between Syeda's visa becoming available and her Petition being deemed "documentarily qualified," whether there was any delay, and the reason(s) for

that possible delay. At this point, only the Department of State has this information. *See Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 453 (6th Cir. 2022) (finding that the Government's analysis of the first *TRAC* factor fails on several grounds and that "Plaintiffs' lack of evidence [does not] terminate their suits at the motion-to-dismiss stage" in part since "the machinery of the U-visa and prewaitlist-work-authorization adjudication processes is known only to USCIS"); *see also Jingjing Liu v. Mayorkas,* No. 20-CV-654 (CRC), 2021 WL 2115209, at *4 (D.D.C. May 25, 2021) ("[I]t would be premature at this stage for the Court to accept USCIS's factual representations about its purported rule of reason.").

Although the court cannot attribute any delay prior to January 31, 2022, to USCIS (*see Alshawy v. U.S. Citizenship & Immigr. Servs.*, No. CV 21-2206 (FYP), 2022 WL 970883, at *6 (D.D.C. Mar. 30, 2022), at this stage, the court is hesitant to endorse Defendant's proposed rule of reason given the complex history of Syeda's visa application. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003) ("[The rule of reason] cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful but will depend in large part . . .  upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."); *see also Al-Gharawy*, 617 F. Supp. 3d at 18 ("These representations . . . do not provide sufficient information for the Court to conclude, at the motion to dismiss stage, that Defendants' delay is based on a rule of reason.").

Unlike in *Durrani* where the first TRAC favor was found to weigh in favor of the defendant, the court does not have sufficient information to determine whether the government has acted rationally and has been diligently working on Syeda's visa petition. *Durrani*, 2024 WL 4228927, at *4 (finding in the defendant's favor for the first TRAC factor given that there did not appear to be a "lack of rationality on the part of the government, [in light of] the current logjam and resource

21

constraints" nor evidence that defendants had not been diligently working on the plaintiff's mother's application).

As to the second TRAC factor, "while Congress stated a policy preference [of 180 days after the initial filing of the application] for expeditious visa adjudication, it did not provide a mandatory timeline, leaving it to the Court to determine whether the delay is unreasonable." *Manshadi*, 2025 WL 524173, at \*5; *see also Dastagir*, 557 F. Supp. 3d at 165 ("With no set timeline, the Court looks to case law for guidance."). For the reasons stated above, the court cannot yet determine whether the delay is unreasonable.

The third and fifth factors are ordinarily assessed together and relate to the "interests prejudiced by delay," including the "impact on human health and welfare and economic harm." *Liberty Fund, Inc. v. Chao,* 394 F. Supp. 2d 105, 118 (D.D.C. 2005). Here, the factors favor Plaintiff who has described hardship in taking care of his disabled son, managing his businesses, and seeing his sister and her family. (Dkt. No. 1 ¶ 7.) His sister and her family, moreover, have had limited educational and economic opportunities because of not being able to emigrate to the United States. (Id. ¶ 8-9.) While the court acknowledges that these hardships may not be out of the ordinary, "[n]o doubt, Plaintiff has pleaded sufficient facts to show that their interests are weighty, implicate health and welfare and are harmed by" Defendant's unreasonable delay in scheduling the visa interview. *Barrios Garcia,* 25 F.4th 430 at 452.

As to the fourth TRAC factor, which concerns "the effect of expediting delayed action on agency activities of a higher or competing activity," courts are hesitant to grant a motion to dismiss where an analysis of facts that are "most likely to be within the exclusive control of the agency" is required. *Rezaii,* 2025 WL 750215, at \*5. This is because "[r]equiring claims of unreasonable agency delay to plausibly surmount the *TRAC* factors would, contrary to *Twombly* and *Iqbal*, effectively impose a heightened pleading standard that unfairly places a thumb on the scales in favor of the

22

government." *Id. (*citing *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 n.2 & n.3 (5th Cir. May 12, 2023) (per curiam)).

Here, Defendants assert that "[g]iven that the plaintiff does not have the right to 'cut the line' in front of others patiently waiting their own turn, the fourth *TRAC* factor effectively precludes this lawsuit." (Dkt. No. 8 at 15 (citing *Kennedy*, 2025 WL 662566, at *4.)) Courts tend to give this factor more weight than the others as courts have consistently "refused to grant relief . . . where 'a judicial order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space and produce no net gain.'" *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1100 (quoting *In re Barr Lab'ys, Inc.,* 930 F.2d 72, 75 (D.C. Cir. 1991)).

However, there are several unknowns in Syeda's case that prevent the court from ascertaining whether Syeda would truly be "cutting the line" or merely having her place in the queue corrected. This court does not know what effect, if any, Syeda's humanitarian reinstatement had or should have had on visa processing, when Syeda's visa became available, and whether the only relevant factor in scheduling visa interviews is the order in which visa applicants' applications are deemed "documentarily qualified." Because Defendants rely solely on case law without providing any agency policies answering these questions, the court finds it premature to determine whether this factor favors Defendants. *See Al-Gharawy,* 617 F. Supp. 3d at 19.

The sixth factor is neutral as no impropriety is alleged by Plaintiff. *See Ahmed*, 759 F. Supp. 3d at 14.

Accordingly, in light of the fact-intensive nature of a TRAC inquiry, the court finds that a more thorough analysis is better suited for a later stage of litigation. *Gonzalez*, 985 F.3d 357 at 375.

**D. Due Process Violation**

The court construes Plaintiff to allege a violation of his procedural and substantive due process rights based on his right to reunification with his sister in the United States and to

23

fundamental fairness in administrative adjudication.[6]

Plaintiff cites the Supreme Court's decision in *Dep't of State v. Muñoz*, 602 U.S. 899 (2024) to support his assertion that the right to family relationships is fundamental. (Dkt. No. 10 at 26.) However, Plaintiff's asserted liberty interest is specifically in family unity by having Syeda join him in the United States, and based on *Muñoz*, this court concludes that he does not have this fundamental right. *See Muñoz*, 602 U.S. at 909. In *Muñoz*, where the plaintiff relied on a "right to reside with her non-citizen spouse in the United States," the Court held that "a citizen does not have a fundamental liberty interest in her non-citizen spouse being admitted to the country." *Id.* at 909-10. Although in *Muñoz* the plaintiff asserted a procedural due process claim, the Court explained that even if she had alleged a violation of "her substantive due process right to bring her non-citizen spouse to the United States," such a claim "[could not] succeed . . . because the asserted right is not a longstanding and deeply rooted tradition in this country." *Id.* at 919 (internal quotation marks and citations omitted).

Since then, several courts have extended the holding and reasoning in *Muñoz* to other family members to find that U.S. citizens and lawful permanent residents have no such protected liberty interest nor a plausible allegation of denial of due process. *See, e.g., Chen v. Rubio*, 158 F.4th 393, 396 (2d Cir. 2025) ("Plaintiffs point us to no reason – and we find none – to treat a citizen sponsoring a . . . sibling differently from one sponsoring a spouse."); *Lin v. Mayorkas*, No. 24-CV-01403 (RER),

---

[6] The court construes this to be Plaintiff's claim based on his complaint which alleges an entitlement to "a writ of mandamus pursuant to 28 U.S.C. §§ 1361 and 1651 and this Court's inherent equitable authority compelling Defendants to adjudicate Plaintiff's family's visa application." (Dkt. No. 1 ¶ 39.) Plaintiff goes on to claim a "statutorily created entitlement to adjudication of his family's visa applications." (*Id.* ¶ 40.) The delay in adjudication, Plaintiff alleges, has resulted in a "deprivation of [his] protected interest without due process." (*Id.*) Plaintiff goes on to describe Defendant's conduct as "egregious," "without rational justification," and causing a violation of Plaintiff's substantive and procedural due rights" (*Id.* ¶¶ 41-42.) Plaintiff does not specify the exact manner in which Defendant's conduct has resulted in such violations, but in his opposition memorandum, Plaintiff clarifies that he retains a liberty interest in having 8 U.S.C. § 1202(b) enforced collaterally with 5 U.S.C. § 555(b) and § 706(1) as well as in family unity. (Dkt. No. 10 at 25-26.)

2025 WL 1884304, at *5 (E.D.N.Y. July 7, 2025) (holding that Plaintiff does not have a liberty interest in cohabitating with her brother in the United States); *see also Durrani,* 2024 WL 4228927, at *7 ("[P]laintiff has neither a liberty interest in reuniting with his mother nor a liberty interest in receiving an adjudication of his mother's visa application."); *Nasir v. United States Dep't of State*, 749 F. Supp. 3d 938, 944 (N.D. Ill. 2024) ("Plaintiff's due process claim must fail, as she has no due process right to the prompt adjudication of her father's visa."); *Esghai v. United States Dep't of State*, No. 24 CIV. 2993 (PAE), 2024 WL 4753799, at *8 (S.D.N.Y. Nov. 12, 2024) (holding that plaintiff's asserted liberty interest in his non-citizen mother's visa application was not "deeply rooted in this Nation's history and tradition"); *Morassaei v. United States Dep't of State*, No. SACV 24-823 PA (DFMX), 2024 WL 5047480, at *4 (C.D. Cal. Sept. 25, 2024) ("If, as the Supreme Court declared in *Muñoz*, . . . a spouse has no fundamental right protected by the Due Process Clause to bring a non-citizen spouse to the United States, there is no basis to conclude that [plaintiff] has a fundamental right to bring her father to the United States."). Plaintiff has not provided any reason to deviate from the holdings in these cases. Therefore, this court holds that Plaintiff does not have a fundamental right to reside with his sister in the United States.

As to Plaintiff's right to fundamental fairness in administrative adjudication, to succeed on a procedural due process claim, "a plaintiff must [first] show that there was a cognizable liberty or property interest at stake." *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). "If a cognizable liberty or property interest is at stake, due process requires only a meaningful opportunity to present a case." *Mahmood v. U.S. Dep't of Homeland Sec.,* No. CV 21-1262 (RC), 2021 WL 5998385, at *9 (D.D.C. Dec. 20, 2021) (internal quotation marks omitted). However, "[g]enerally, there is no property right in an immigrant visa." *Id.* (internal quotation marks omitted). This makes sense when considering the *Al-Gharawy* court's explanation that "[t]he Supreme Court 'long ago held that Congress is entitled to set the conditions for an [non-

25

citizen's] lawful entry into this country and that, as a result, a[] [non-citizen] at the threshold of initial entry cannot claim any greater rights under the Due Process Clause.'" *Al-Gharawy,* 617 F. Supp. 3d at 20 (quoting *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 107 (2020)). "As a result, visa-application procedures cannot violate the Due Process Clause because '[w]hatever the procedure authorized by Congress is, it is due process.'" *Id.* (quoting *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 544 (1950)). Due process to fundamental fairness in administrative adjudication is guaranteed by the court which assures that defendants in such cases comply with their statutory duties. *Id.*

Although the cases cited involve non-citizen plaintiffs, the court does not see why the analysis would differ when applied to a U.S. citizen who is not even the petitioner, but rather only a financial sponsor for the non-citizen. And Plaintiff has not cited any caselaw supporting his asserted liberty right in fundamental fairness in administrative adjudication. There is no reason to deviate from D.C. district courts' holdings that there is no property right in an immigrant visa or the procedures through which it is procured and that due process to fundamental fairness is guaranteed through the courts. *Mahmood,* 2021 WL 5998385, at *10; *Al-Gharawy,* 617 F. Supp. 3d at 20**.**

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part as to Plaintiff's due process claim (Count III). Defendants' motion to dismiss is denied in part as to Plaintiff's APA claim (Count I) and Writ of Mandamus claim (Count II).

It is So Ordered.

 /s/ Mark G. Mastroianni  
MARK G. MASTROIANNI  
United States District Judge